UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
Case No. 98-14294-CIV-GRAHAM

KOMAR COMPANY, ET AL.,

    Plaintiffs,

vs.

MICHAEL W. MOORE, Secretary
of the Florida Department of
Corrections, et al.,

    Defendants.
_____/



FILED by _____ D.C.

AUG 30 2002

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

## ORDER

**THIS CAUSE** comes before the Court upon Defendant's Supplemental Motion for Summary Judgment (D.E. 154) and Plaintiff's Motion for Summary Judgment (D.E. 165).

**THE COURT** has considered the motions, the pertinent portions of the record, and is otherwise duly advised in the premises.

### I.   INTRODUCTION

As this Court stated in its February 25, 2002 Order ("Order"), this case involves the constitutionality of an FDOC regulation prohibiting inmates from possessing sexually explicit pictorial material. Plaintiffs, four FDOC inmates and a mail-order vendor of books and magazines, Paper Wings, Ltd. (f/k/a Komar Company), filed this action under 42 U.S.C. §1983, claiming that the FDOC's revised Admissible Reading Material Rule ("ARM Rule") violates their First



Amendment rights. The ARM Rule challenged by Plaintiffs provides as follows:

> (2) Publications shall be rejected when one of the following criteria is met...
>
> \* \* \*
>
> (i) It pictorially depicts sexual conduct as follows:
>
> 1. Actual or simulated sexual intercourse;
>
> \* \* \*
>
> 3. Masturbation;
>
> \* \* \*
>
> 5. Actual contact with a person's unclothed genitals, pubic area, buttocks, or if such person is female, breast;
>
> \* \* \*
>
> (j) It pictorially depicts nudity or lewd exhibition of the genitals in such a way as to create the appearance that sexual conduct is imminent, i.e., display of contact or intended contact with a person's unclothed genitals, public area, buttocks or female breasts orally, digitally or by foreign object or by display of sexual organs in an aroused state.

See §33-501.401, Fla. Admin. Code. Thus, under the ARM Rule, if a publication satisfies any of the criteria listed above, that publication is impounded.

In the February 25, 2002 Order, the Court evaluated the parties' respective arguments concerning whether the ARM Rule is

2

constitutional under the standard set forth in Turner v. Safely[1] and its progeny. In that Order, the Court afforded the FDOC the opportunity to supplement the record with any institutional evidence available to it supporting the FDOC's position that the ARM Rule is reasonably related to legitimate FDOC goals.

## II. **STANDARD OF REVIEW**

The purpose of summary judgment is to determine "whether there is a need for trial - whether in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact . . . " Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A court may grant summary judgment only if it appears through pleadings, depositions, admissions and affidavits that there is no "genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265; Real Estate Financing v. Resolution Trust Corporation, 950 F.2d 1540, 1543 (11th Cir. 1992); McGahee v. Northern Propane Gas Co., 858 F.2d 1487, 1493 (11th Cir. 1988), cert. den., 490 U.S. 1084, 109 S.Ct. 2110 (1989). "The party seeking summary judgment bears the exacting burden of demonstrating that there is no genuine dispute

---

[1] Turner v. Safely, 482 U.S. 78, 84, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987).

as to any material fact in the case." <u>Clemons v. Dougherty County, Ga.</u>, 684 F.2d 1365, 1368 (11th Cir. 1982)(citing <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608 (1970)).

In order for the court to determine whether the movant has met this burden, the evidence, and all factual inferences therefrom, must be viewed in the light most favorable to the non-moving party. <u>Clemons</u>, 684 F.2d at 1368, <u>citing</u> <u>Adickes</u>, 398 U.S. at 157, 90 S.Ct. at 1608.

### III. <u>DISCUSSION</u>

The Court is mindful that "prison walls do not form a barrier separating prison inmates from the protections of the Constitution." Order, at 8 (citing <u>Turner v. Safley</u>, 482 U.S. at 84 (citations omitted); <u>Thornburgh v. Abbott</u>, 490 U.S. 401, 407, 109 S.Ct. 1874, 1878, 104 L.Ed.2d 459 (1989)). At the same time, analysis of the ARM Rule's constitutionality rests upon the practical consideration that "courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform." <u>Id.</u> For this reason, federal courts should be wary of second-guessing prison officials' reasonable judgments in the multitude of decisions concerning prison life, and must apply a deferential standard if "prison administrators ... and not the courts, [are] to make the difficult judgments concerning institutional operations." <u>Id.</u> 482 U.S. at 89 (citations omitted).

Thus, in <u>Turner v. Safely</u>, the Court adopted a reasonableness test for evaluating prison regulations such as the ARM Rule, and held that when prison regulation impinges upon an inmate's constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests. <u>See id.</u>, 482 U.S. at 89.

To determine if a regulation is reasonable under <u>Turner</u>, the Court must evaluate (1) whether there is a "valid, rational connection" between the regulation and a legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the asserted constitutional right that remain open to the inmates; (3) whether and to what extent the accommodation of the asserted right will have an impact on prison staff, inmates, and the allocation of prison resources generally; and (4) whether the regulation represents an "exaggerated response" to prison concerns. <u>See</u> <u>Turner</u>, 482 U.S. at 89-91, 107 S.Ct. at 2261-63.

### A.   **The Supplemented Record**

As set forth above, in the Court's February 25, 2002 Order, the Court afforded the FDOC the opportunity to submit institutional evidence supporting its position that there exists a rational connection between the ARM Rule and the FDOC's goals. The FDOC's supplemented record, and the Plaintiffs' response thereto, is discussed below.

### 1. The Officer Paul Dorobiala Incident

The FDOC has introduced the deposition testimony of correctional officer Paul Dorobiala. On April 12, 1988, Officer Dorobiala was battered by an inmate, Timothy Parker, who took offense when Officer Dorobiala confiscated sexually graphic pictures which Parker posted on his cell walls. The pictures showed female models exposed in various poses, and touching their breasts and genitalia. Under the version of the ARM Rule in effect at that time, inmates were allowed to possess such pictures, but were not allowed to display pictures on their cell walls.

When the inmate discovered that his sexually explicit pictures were being confiscated, he became aggressive and shoved Officer Dorobiala outside the cell, where he hit a rail that ran along the upstairs walkway and was injured. A disciplinary proceeding followed, and the inmate was assessed thirty (30) days disciplinary confinement.

### 2. The South Florida Reception Center "Rape" Incident

The FDOC also offered the affidavit testimony of correctional officer Greg Dybiec, Senior Lead Inspector for the FDOC's Office of Inspector General. Appended to Officer Dybiec's affidavit is an FDOC investigative file relating to an incident of inmate homosexual conduct at the South Florida Reception Center on November 9-10, 1994. The incident report reveals that an inmate-victim had reported being raped by three other inmates. The victim

claimed that two of the assailants showed him sexually explicit magazines and then assaulted him sexually.

An investigation ensued, during which several inmates were interviewed. From this investigation emerged a competing version of the inmate-victim's story; namely that the incident did not involve a rape, but rather an inmate "victim" who was allegedly trading sex for pornographic magazines. The inmates who were interviewed claimed that after the pornographic magazines were not exchanged, the inmate-victim alleged the incident was a rape. Shortly following the report of the incident, investigators recovered a sexually explicit magazine from the dormitory where the involved inmates were housed, featuring a man and woman engaged in sexual acts.

### 3.  **Affidavit of Library Services Administrator**

The FDOC also offered the affidavit testimony of Allen Overstreet, who has served as the FDOC's Library Services Administrator for the last twelve years, and in various library services positions at the FDOC for the last twenty-two years. As Library Services Administrator, Mr. Overstreet has been continually responsible for reviewing admissible reading material for the FDOC. Mr. Overstreet testified that a decade ago, publications reviewed by the Literature Review Committee typically depicted mere nudity. Mr. Overstreet also testified that in the last decade, publications reviewed by the Literature Review Committee have become

increasingly explicit, and that publications depicting sex acts have become commonplace.

### 4. Testimony of Female FDOC Officials

The FDOC also introduced the deposition of Colonel Martha Humphries, who served as an FDOC correctional officer since 1983 in various positions at various FDOC facilities. Colonel Humphries testified that it was common for inmates to treat female officers in a lewd or offensive manner, particularly during cell searches when the female officers have to review publications in inmates' cells, in search of contraband between the pages. The supplemented record also reflects that other female FDOC prison officials testified to similar lewd or disruptive comments made by inmates to female prison staff in connection with references to sexually explicit material.

### 5. The FDOC's Data Analysis

The FDOC has introduced the deposition testimony of David Ensley, an operations and management consultant in the FDOC's Bureau of Research and Data Analysis. Mr. Ensley supervises inmate data analysis, including inmate population information involving disciplinary reports, escapes, inmate transfers, releases, admissions, and the like. Mr. Ensley testified that since the ARM Rule has been in place, the FDOC data analysis indicates statistically significant declines in guilty findings for disciplinary offenses of sexual battery or attempted sexual

battery, bartering with others, sex acts or unauthorized physical contact involving inmates, and unauthorized physical contacts involving non-inmates. However, during his deposition, Mr. Ensley specifically disavowed any claim that the ARM Rule is responsible for any decrease in disciplinary violations, and testified that the data analysis did not assess whether the ARM Rule had any effect on the decrease in disciplinary violations. Indeed, Mr. Ensley testified that he is unaware of how any such effect could be assessed statistically.

### B. **Plaintiffs' Objections**

In response, Plaintiffs argue that the supplemented record is insufficient to establish that there is a reasonable relationship between the ARM Rule and legitimate FDOC goals, and in the alternative, maintain that genuine disputes of material fact remain in this regard, precluding summary judgment.

First, Plaintiffs contend that the two documented incidents relied on by the FDOC do not support the existence of a relationship between sexually explicit material and inmate misconduct. Plaintiffs submit that the inmate who battered Officer Dorobiala for confiscating sexually explicit material may have had a violent reaction if any other material had been confiscated. Plaintiffs further maintain that the FDOC has failed to offer any evidence concerning the inmate's state of mind, or concerning how

9

inmates usually react when guards confiscate their property.

Plaintiffs' concerns notwithstanding, it remains undisputed that Officer Dorobiala was battered and injured by an inmate, following an incident wherein sexually explicit material was confiscated from the inmate. While the inmate may very well have had a violent reaction to the confiscation of material concerning Malcolm X or Mother Theresa, as Plaintiffs suggest, it remains undisputed that *this* incident concerned sexually explicit material.

Next, Plaintiffs contend that the investigatory file concerning the false rape allegation in 1994 should not be considered by the Court, as hearsay statements from convicts about a jailhouse rumor are inadmissible. The Court agrees that the incident regarding the false rape allegation may present the FDOC with certain evidentiary problems, such as if the FDOC intended to submit such evidence to prove a rape actually occurred.

However, the FDOC submits, and the Court agrees, that regardless of which version of events is accepted, it remains undisputed that the investigatory file reveals that sexually explicit material played a part in a disruptive incident at an FDOC facility.

Plaintiffs also argue that the FDOC misstates the testimony of the female guards, including Colonel Martha Humphries, Geri Theobald, and Officer Krista Murray. Plaintiffs maintain that Colonel Humphries did not testify based on her personal knowledge,

and that her knowledge of lewd comments and behavior by inmates during cell searches was based on hearsay statements of other employees. Plaintiffs also contend that although Geri Theobald testified that inmates made lewd comments to her "three or four times a week," only one such incident ever involved a sexually explicit publication. Similarly, although Krista Murray claims she witnessed numerous instances of lewd comments involving sexually explicit publications, Plaintiffs contend that she only witnessed one such incident involving a picture depicting "sexual conduct," and another incident involving a "nude" picture which would still be admissible under the new ARM Rule. Thus, Plaintiffs maintain that at best, these witnesses' testimony reveals that problems associated with sexually explicit material were very rare and minor, and that the ARM Rule is an "exaggerated response" to prison concerns.

Plaintiffs' objections to this testimony are well-noted. However, after taking Plaintiffs' objections into consideration, it remains undisputed that several of the incidents described by Officer Krista Murray and Geri Theobald reveal instances of lewd conduct by inmates wherein sexually explicit material was involved.

Finally, with respect to the data analysis tending to show that FDOC disciplinary violations for certain sex-related offenses have decreased over time, the Court agrees with Plaintiffs that such data is irrelevant for purposes of evaluating the ARM Rule's

constitutionality, and accordingly, the Court will not consider any such data in its analysis of whether the ARM Rule is "rationally connected" to the FDOC's legitimate goals.

C. **Rational Connection**

The rational connection inquiry contains three sub-parts, requiring the Court to determine whether the FDOC's proffered justifications for the ARM Rule are (1) legitimate, (2) neutral, and (3) whether the ARM Rule is "rationally related to that objective." Thornburgh, 490 U.S. at 414. In the Court's February 25, 2002 Order, the Court held that the proferred justifications for the ARM Rule were legitimate, and that the ARM Rule was neutral under Turner. See Order, at 12-13.

With respect to the third factor -- whether the ARM Rule is rationally related to the FDOC's legitimate objectives -- the court noted that for a regulation to be rational, it is enough that prison officials could have reasonably thought that the regulation would advance their objectives. See, e.g., Frost, 197 F.3d at 355.

Several courts have noted that there appears to be a logical, common-sense connection between the prohibition of sexually explicit material and the goals of security, discipline, order and rehabilitation. See, e.g., Amatel v. Reno, 156 F.3d 192, 200-201 (D.C. 1998) (noting Congress could have seen a rational connection because "[c]ommon sense tells us that prisoners are more likely to

develop the now-missing self-control and respect for others if prevented from poring over pictures that are themselves degrading and disrespectful.").

The Court agrees that there is a common sense connection between the prohibition of sexually explicit material and the FDOC's goals of security, order, discipline and rehabilitation. However, in ruling on the parties' prior motions for summary judgment, the Court was not inclined to rely on common sense alone, and granted the FDOC the opportunity to supplement the record with additional institutional evidence, in view of the FDOC's stated position that such evidence existed.

In support of a finding of a rational connection, the FDOC has identified several incidents of disruptive inmate conduct involving sexually explicit material. Plaintiffs, however, maintain that the institutional evidence submitted is not enough to support a finding of a rational connection, and argue that the FDOC should have made a greater evidentiary showing of documented incidents of misconduct. Plaintiffs suggest that a greater showing is necessary under Turner, because the Turner standard "is not toothless." Thornburgh, 490 U.S. at 414.

The Court must note that certain of Plaintiffs' objections to the supplemented record are not without merit, and the Court agrees with Plaintiffs that the standard set forth in Turner is not toothless. For this reason, the Court felt it necessary to

13

consider evidence the FDOC had claimed was available to it.

However, while the <u>Turner</u> reasonableness standard is not "toothless," the requirement that there be a rational connection is not as strict as Plaintiffs urge. Indeed, as the Court in <u>Turner</u> recognized, a certain amount of deference is appropriate and necessary in order to allow prison officials the flexibility and opportunity "to adopt innovative solutions to the intractable problems of prison administration." <u>Turner</u>, 482 U.S. at 89.[2]

Accordingly, the Court finds that based on the totality of the documentary and other evidence submitted, in conjunction with the common sense connection between the regulation and the FDOC's goals, prison officials could have reasonably thought that the ARM Rule would advance the goals of security, discipline, order and rehabilitation. As such, the Court must conclude that the rational connection requirement is satisfied, and that the connection between the ARM Rule and the FDOC's goals is not "so remote as to render the policy arbitrary or irrational." <u>Turner</u>, 482 U.S. at 89-90.

In addition, the Court finds that the Ninth Circuit's recent opinion in <u>Whitmire v. Arizona</u>, 2002 U.S. App. LEXIS 16156 (9th Cir. August 12, 2002), filed by Plaintiffs in a Notice of Recent Precedent, does not compel a different result. In that case, in

---

[2] Thus, the Court rejects the notion that in order to satisfy the rational connection requirement, the FDOC must demonstrate that the number of incidents involving sexually explicit material bears a significant relationship to the total number of incidents in FDOC facilities overall.

14

ruling on a motion to dismiss, the district court upheld a regulation prohibiting same-sex kissing or hugging during inmate visitation, based on the district court's determination that there was a common-sense connection between the regulation and concerns of homosexual labeling. Id., at *2. The Ninth Circuit reversed, finding that based on the record before it, there was no common-sense connection between the regulation and the stated objectives. Unlike the situation presented in Whitmire, where the district court relied on common sense alone, in the instant case the Court has reached its conclusion based on its consideration of the common sense connection between the ARM Rule and the FDOC's goals *and* the totality of the documentary support set forth in the record. Accordingly, Plaintiffs' reliance on Whitmire is misplaced.

In addition, Plaintiffs argue that in the alternative, the Court should find that genuine disputes of material fact remain precluding summary judgment. In this regard, Plaintiffs submit the testimony of Lee Roy Black, a former Regional Director for FDOC Region V from 1992-1996, who testified that he never witnessed or heard of a situation wherein a sexually explicit publication created a problem for security, discipline, or order in Region V. Plaintiffs argue that Mr. Black's testimony creates genuine disputes of material fact precluding summary judgment in favor of the FDOC.

The Court finds that the affidavit testimony of Lee Roy Black does not create any genuine disputes of material fact precluding

15

summary judgment. The mere fact that one former FDOC official with responsibility over one of several FDOC regions never witnessed or heard of an incident involving sexually explicit material, does not create a genuine dispute of material fact concerning the instances of misconduct which the FDOC has documented, as discussed above.

Having determined that there is no genuine dispute of material fact concerning the "rational connection" between the ARM Rule and the FDOC's goals, the Court will now evaluate the remaining <u>Turner</u> factors.

### D.  Alternative Means

In its February 25, 2002 Order, the Court found that the ARM Rule satisfies this factor, as there are substantial alternative means available to the inmates. <u>See</u> Order, at 23. The ARM Rule only bans materials pictorially depicting sexual conduct. It does not ban materials containing frontal nudity, nor does it ban sexually explicit written materials, or even sexually explicit pictorials featuring clothed persons. Accordingly, the Court finds that the ARM Rule satisfies the second of the Turner factors, as "alternative means of exercising the right" remain open to FDOC inmates. <u>See</u> <u>Turner</u>, 482 U.S. at 90.

### E.  Impact on Others

The third factor the Court must address is the impact that

accommodation of the asserted constitutional right would have on prison personnel, other inmates, and the allocation of prison resources. See Turner, 482 U.S. at 90. The FDOC maintains that admitting sexually explicit pictures "would cause ripple effects such as real potential for theft of or fighting over highly prized sexually explicit pictures, and adverse effects on rehabilitation of inmates..." Defendant's Motion for Summary Judgment, D.E. 115, at 13.

Having determined that there is a rational relationship between the ARM Rule and the FDOC's legitimate goals, the Court concludes that the FDOC cannot accommodate Plaintiffs without a risk of increased disorder or incidents of disruption in FDOC facilities. Cf. Amatel v. Reno, 156 F.3d at 201 ("if Congress may reasonably conclude that pornography increases the risk of prison rape, then the adverse impact is substantial. Accommodating the right poses a threat to the safety of guards and other inmates.").

F. **Exaggerated Response**

The fourth and final factor for the Court to consider under Turner is whether "the existence of obvious, easy alternatives may be evidence that the regulation is not reasonable, but is an 'exaggerated response' to prison concerns." Turner, 482 U.S. at 90-91. As the Court stated, "if [Plaintiff] can point to an alternative that fully accommodates the prisoner's rights at *de*

17

*minimis* cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard." Id. It must be noted that this factor is not a "least restrictive means" test.

Plaintiffs argue that all they seek is a return to the ARM Rule as it existed before 1998. For purposes of the Court's analysis, it is irrelevant that the prior version of the ARM Rule was patterned after the regulation approved by the Court in Thornburgh, as the Court by no means indicated that the regulation approved in Thornburgh was the only type of regulation which could pass muster under the Turner v. Safely test.

Here, it is undisputed that under the prior version of the ARM Rule, sexually explicit materials were introduced into FDOC facilities and played a role in certain incidents of disruption detrimental to legitimate FDOC goals. Thus, the Court finds that Plaintiffs have failed to demonstrate any genuine disputes of material fact indicating that the ARM Rule is an exaggerated response to FDOC concerns.

### G. Individualized Determination

Finally, Plaintiffs maintain that the ARM Rule is unconstitutional under Turner because it does not allow for an individualized determination that each particular publication is specifically detrimental to FDOC objectives, and contend that the

18

ARM Rule bans publications based on their sexually explicit content.

The Court disagrees. A regulation is not unconstitutional under Turner simply because it bans publications which, upon review, satisfy certain criteria. See, e.g., Frost v. Symington, 197 F.3d 348, 358 (9th Cir. 1999) (upholding ban on materials depicting "actual penetration"); Mauro v. Arpaio, 188 F.3d 1054, 1059 (9th Cir. 1999)(upholding ban on materials containing frontal nudity).

As set forth above and in this Court's prior Order, the ARM Rule provides that each publication is to be individually reviewed.[3] If the publication satisfies the criteria as specified in the rule, the publication is impounded, not because of its sexual content, but because of the FDOC's reasonable judgment that publications satisfying certain criteria would be detrimental to legitimate FDOC goals. In the instant case, the FDOC could have reasonably thought that allowing sexually explicit materials into FDOC facilities would be detrimental to the FDOC's legitimate penological objectives. Accordingly, the Court is satisfied that the ARM Rule provides for sufficient individualized review of publications and is not unconstitutional on this ground.

---

[3] It is worth noting that the ARM Rule does not establish an excluded list of publications, nor does it set forth a blanket prohibition against the receipt of particular publications. Rather, the ARM Rule provides a procedure for individual review and appeal of every publication. See §§33-501.401; 501.501(5) and (8), Fla. Admin. Code.

19

## IV. CONCLUSION

Based on the foregoing, the Court finds that the ARM Rule bears a reasonable relationship to legitimate FDOC objectives, and satisfies each of the four factors set forth in Turner v. Safely. As such, the Court concludes that Rule 33-501.401(2), Fla. Admin. Code, is constitutional, and that the FDOC is entitled to summary judgment as a matter of law.  Therefore, it is

**ORDERED AND ADJUDGED** that Plaintiffs' Renewed Motion for Summary Judgment (D.E. 165) is **DENIED.**  It is further

**ORDERED AND ADJUDGED** that Defendants' Supplemental Motion for Summary Judgment (D.E. 154) is **GRANTED.**  It is further

**ORDERED AND ADJUDGED** that any pending motions are denied as moot.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 30th day of August, 2002.

DONALD L. GRAHAM
UNITED STATES DISTRICT JUDGE

cc:   Magistrate Judge Lynch
      Robert J. Becerra, Esq.
      Andrew D. Levy, Esq.
      Martin H. Schreiber, Esq.
      David J. Glantz, Esq.